# United States Court of Appeals

## For the First Circuit

No. 05-1937

FREDY HUGO PENA-MURIEL,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

Ronald Olen, for petitioner.
Papu Sandhu, Senior Litigation Counsel, Michael J.
Sullivan, U.S. Attorney, Frank Crowley, Special Assistant U.S.
Attorney, Peter D. Keisler, Assistant Attorney General, and David
M. McConnell, Deputy Director, on brief for respondent.

June 13, 2007

**LIPEZ**, <u>Circuit Judge</u>.    Noting that a court has now vacated the criminal conviction on which his removal proceedings were premised, Fredy Hugo Pena-Muriel asks us to vacate the Bureau of Immigration Appeals' ("BIA") decision refusing to reopen his removal proceedings.    Pena-Muriel argues that a change in immigration law or, alternatively, principles of due process require such a reopening, even though he left the country before he petitioned the government to reopen his deportation proceedings. We reject his arguments and deny the petition for review.

## I.

Pena-Muriel, a native and citizen of Bolivia, was admitted to the United States in 1970, when he was less than two years old.    After residing in the United States as a lawful permanent resident for twenty-seven years, Pena-Muriel was convicted of domestic assault in February 1997 under R.I. Gen. Laws §§ 11-5-3 and 12-29-5; he received a one-year suspended sentence and probation.    As a result of his conviction, Pena-Muriel was placed in removal proceedings.    See 8 U.S.C. § 1227(a)(2)(A)(iii) (providing for deportation of aliens convicted of an aggravated felony); and <u>id.</u> § 1227(a)(2)(E)(i) (same for crimes of domestic violence).    An Immigration Judge ("IJ") ordered Pena-Muriel removed to Bolivia in August 1997.    Pena-Muriel neither applied for relief from the order nor appealed the IJ's decision.    He subsequently left the United States.

In March 2002, Pena-Muriel's Rhode Island conviction was vacated on the basis of an affidavit from the victim stating that Pena-Muriel "should not have been charged" without further elaboration. The victim simply said: "I am not at liberty to explain why." Shortly thereafter – but roughly five years after his departure from the United States – Pena-Muriel moved to reopen his removal proceedings based on the vacatur of his conviction. The IJ denied the motion to reopen, citing 8 C.F.R. § 3.23(b)(1) (now designated at 8 C.F.R. § 1003.23(b)(1)), which states: "A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings <u>subsequent to his or her departure from the United States</u>." (emphasis added). The BIA summarily affirmed the IJ's decision in February 2003.

Months later, Pena-Muriel filed a petition for a writ of habeas corpus in the District of Massachusetts. Upon the government's motion, the case was transferred to the First Circuit as a petition for review pursuant to section 106(c) of the REAL ID Act of 2005, Pub. L. No. 109-13, div. B, 119 Stat. 231. <u>See</u> <u>Alexandre</u> v. <u>U.S. Att'y Gen.</u>, 452 F.3d 1204, 1206 (11th Cir. 2006) ("Section 106 of the REAL ID Act amended 8 U.S.C. § 1252(a) so that a petition for review filed with the appropriate court is now an alien's exclusive means of review of a removal order. While limiting the avenues of judicial review, the REAL ID Act expanded

-3-

courts of appeals' jurisdiction to consider constitutional and legal questions presented in a petition for review. § 1252(a)(2)(D). Congress believed that '[b]y placing all review in the courts of appeals, [the REAL ID Act] would provide an 'adequate and effective' alternative to habeas corpus.'" (quoting 151 Cong. Rec. H2813-01) (citation omitted)).

Pena-Muriel now argues that Congress abrogated the regulation precluding consideration of a motion to reopen after an alien has departed the country when it passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified as amended in scattered sections of 8 U.S.C.). IIRIRA amended the Immigration and Naturalization Act ("INA"), in relevant part, by removing 8 U.S.C. § 1105a(c) (1994) (repealed 1996), which stated: "An order of deportation . . . shall not be reviewed by any court if the alien . . . has departed from the United States after the issuance of the order." Describing 8 C.F.R. § 1003.23(b)(1) as "linked" to this statutory provision, Pena-Muriel argues that the deletion of § 1105a(c) invalidated the regulation. Alternatively, Pena-Muriel argues that allowing his deportability to be premised on a vacated conviction violates his Fifth Amendment due process rights.

## II.

### A. The Statutory Claim

The premise of Pena-Muriel's statutory claim – that the regulation on which the BIA based its dismissal was inextricably linked to the language of the superseded statute – is wrong. At the time the regulation was adopted, there was no statutory authority for a motion to reopen. See INS v. Doherty, 502 U.S. 314, 322 (1992).[1] Instead, the regulation arose from the Attorney General's broad discretion to regulate relief from deportation orders. See Goncalves v. INS, 6 F.3d 830, 832 (1st Cir. 1993) (recognizing that "Congress intended the Attorney General to have considerable leeway in working out the precise procedures for determining contested issues related to deportation and 'discretionary relief'"). The Attorney General's authority to prohibit consideration of motions to reopen from aliens who have departed the United States did not originally depend upon the statutory language in § 1105a(c). Thus, the removal of that statutory language by IIRIRA does not abrogate the Attorney General's authority to continue to enforce the limitations of 8 C.F.R. § 1003.23(b)(1).

---

[1] With IIRIRA's enactment, motions to reopen were transformed from a regulatory to a statutory form of relief. See Azarte v. Ashcroft, 394 F.3d 1278, 1283-84 (9th Cir. 2005) (discussing IIRIRA's codification of the reopening procedure).

Pena-Muriel also argues that, by deleting the language of § 1105a(c), Congress signaled its intent that the Attorney General should no longer enforce 8 C.F.R. § 1003.23(b)(1). The Attorney General counters that the statutory change signals no such intention. The parties point to no statutory language that explicitly addresses the issue. As the Supreme Court has stated, where a statute is silent or ambiguous on the issue at hand, we must "defer to a reasonable construction by the agency charged with its implementation." Barnhart v. Thomas, 540 U.S. 20, 26 (2003) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843 (1984)).

In challenging the reasonableness of the Attorney General's interpretation of the INA amendments as they relate to the reopening issue, Pena-Muriel cites due process concerns expressed during testimony before the House Judiciary Committee preceding IIRIRA's passage:

> The administration is committed to ensuring that aliens in deportation proceedings are afforded appropriate due process; however, the availability of multiple layers of judicial review has frustrated the timely removal of deportable aliens.

Removal of Criminal and Illegal Aliens: Hearing Before the Subcomm. on Immigration and Claims of the H. Comm. on the Judiciary, 104th Cong. 15 (1995) (statement of T. Alexander Aleinikoff, General Counsel, Immigration and Naturalization Service). Pena-Muriel argues that Congress, motivated by due process concerns to

reinstate judicial review despite an alien's departure, would be similarly motivated to permit motions to reopen administrative proceedings by persons subject to removal, deportation, or exclusion proceedings after they have left the country.

Pena-Muriel misunderstands the context of the due process concerns expressed in the congressional testimony. Prior to IIRIRA, "an alien seeking review of a deportation order was entitled to an automatic stay pending the completion of that review." Arevalo v. Ashcroft, 344 F.3d 1, 6 (1st Cir. 2003). IIRIRA "altered that paradigm," instead "requir[ing] a review-seeker to ask the reviewing court for a stay of removal," id., and raising the standards that must be met in order to receive such a stay. See Reno v. American-Arab Anti-Discrim. Comm., 525 U.S. 471, 475 (1999) (noting that IIRIRA "repealed the old judicial-review scheme set forth in § 1105a and instituted a new []and significantly more restrictive[] one"). Because this change would result in the deportation of many aliens while they were awaiting judicial review, Congress amended the INA to allow these aliens to continue litigating their appeals from abroad. See Tapia Garcia v. INS, 237 F.3d 1216, 1217 (10th Cir. 2001) (recognizing, in this limited context, that "deportation no longer forecloses judicial review").

Understood against this background, the testimony cited by Pena-Muriel does not advance his position. Indeed, the concern

expressed about "multiple layers of judicial review" reflects an intent to reinforce the finality of removal decisions. With the amendments to the INA, Congress allowed post-departure appeals of the BIA's original order of deportation, thereby protecting the alien's first opportunity to challenge a deportation order in court. That change does not remotely support an argument that Congress also intended, implicitly, to allow post-departure petitions to reopen a closed administrative proceeding.

The government also points out that IIRIRA enacted strict time limits for the filing of motions to reopen and limited aliens to a single filing. See Azarte v. Ashcroft, 394 F.3d 1278, 1286 (9th Cir. 2005) (noting that before IIRIRA "motions to reopen were never time-barred"); Sidikhouya v. Gonzales, 407 F.3d 950, 951-52 (8th Cir. 2005) (explaining that IIRIRA allows aliens to file a "single motion to reopen at the conclusion of removal proceedings"). Yet, Congress remained silent regarding the long-standing regulatory bar imposed by 8 C.F.R. § 1003.23(b)(1). Citing Supreme Court precedent, the government argues that "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" Commod. Futures Trading Comm'n v. Schor, 478 U.S. 833, 846 (1986) (quoting NLRB v. Bell Aerospace

Co., 416 U.S. 267, 275 (1974)).  The government's insistence that the Attorney General's interpretation was the one intended by Congress may be overreaching.  Nevertheless, this precedent supports the reasonableness of the Attorney General's interpretation of the effect of the statutory change on the regulatory bar imposed by 8 C.F.R. § 1003.23(b)(1) on motions to reopen.

## B.  The Due Process Claim

Pena-Muriel argues that allowing his deportation order to stand on the basis of a criminal conviction that has since been vacated violates his constitutional right to due process.  We disagree.

Pena-Muriel cites a variety of cases for the principle that "the overturning of a conviction upon which deportability was premised is an appropriate basis for reopening administrative proceedings."  De Faria v. INS, 13 F.3d 422, 423 (1st Cir. 1993); see also Alim v. Gonzales, 446 F.3d 1239, 1249-50 (11th Cir. 2006); Cruz-Garza v. Ashcroft, 396 F.3d 1125, 1128-29 (10th Cir. 2005). However, the fact that a vacatur may be an "appropriate" basis for reopening a deportation order does not establish a due process right to such reopening after one has departed the country.[2]

---

[2] In addition, Pena-Muriel's situation is distinguishable from these cases because each of them involved convictions that were vacated before the removal proceedings had terminated and while each petitioner remained in the country.

It is well-established that aliens are entitled to due process in deportation proceedings. See Reno v. Flores, 507 U.S. 292, 306 (1993); Choeum v. INS, 129 F.3d 29, 38 (1st Cir. 1997). In this context, due process requires that the alien receive notice of the charges against him, and a fair opportunity to be heard before an executive or administrative tribunal. Choeum, 129 F.3d at 38. Pena-Muriel received due process in his deportation proceedings. At the time of his departure, Pena-Muriel had been convicted of crimes triggering deportation provisions. His removal proceeding came to a lawful conclusion before his conviction was vacated. With the benefit of appropriate notice, he received a hearing before an IJ and the opportunity for an administrative appeal to the BIA. He waived an appeal to the BIA after he was ordered removed. He made no attempt to vacate his conviction prior to his departure; and he voluntarily left the country. He makes no claim that the IJ's removal order in 1997 was invalid or constitutionally infirm.

Now Pena-Muriel seeks to reopen proceedings that ended roughly ten years ago, on the basis of a vacatur that occurred five years after he voluntarily removed himself from the country. Due process does not require continuous opportunities to attack executed removal orders years beyond an alien's departure from the country. Indeed, there is a strong public interest in bringing finality to the deportation process. See Baez v. INS, 41 F.3d 19,

-10-

24 (1st Cir. 1994) (noting "Congress's intention to eliminate excessive appeals and lend finality to the deportation process").

**III.**

For the foregoing reasons, we deny the petition for review.

So ordered.