**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 15, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARTIN ROSILLO-PUGA, a/k/a
Martin Puga, a/k/a Martin Rosillo,

      Petitioner,

    v.

ERIC H. HOLDER, JR.,[*] United States
Attorney General,

      Respondent.

------------------------------------------

THE AMERICAN IMMIGRATION
LAW FOUNDATION,

      Amicus Curiae.

No. 07-9564

---

**ON PETITION FOR REVIEW FROM**
**THE BOARD OF IMMIGRATION APPEALS**

---

Cynthia G. Burnside, Holland & Knight LLP, Atlanta, Georgia (Laurie Webb
Daniel, Kimberly R. Ward, Holland & Knight LLP, Atlanta, Georgia, and
Rachel E. Rosenbloom, Post-Deportation Human Rights Project Center for Human
Rights and International Justice, Boston College, Newton, Massachusetts, with
her on the briefs) for Petitioner.

James A. Hurley, Attorney (Anh-Thu P. Mai, Senior Litigation Counsel, with him
on the brief), United States Department of Justice, Civil Division, Washington,
D.C., for Respondent.

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for
Michael B. Mukasey as the respondent in this appeal.

Trina Realmuto and Beth Werlin, Washington, D.C., filed an amicus curiae brief on behalf of the American Immigration Law Foundation.

Before **LUCERO**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Petitioner Martin Rosillo-Puga seeks review of a decision issued by the Board of Immigration Appeals ("BIA"), in which the BIA affirmed the Immigration Judge's ("IJ") denial of Rosillo-Puga's motion to reconsider or reopen his deportation proceedings. The IJ, in reliance on regulations implementing the Immigration and Nationalization Act, had ruled that he lacked jurisdiction over the motion because Rosillo-Puga had previously been removed from the United States. After concluding that the regulations are valid, we deny Rosillo-Puga's petition for review.

## BACKGROUND

On July 18, 1995, Rosilla-Puga, a native and citizen of Mexico, was admitted into the United States in Indiana as a conditional resident. On July 24, 1997, he was convicted of battery in an Indiana state court. On August 14, 2003, the Department of Homeland Security ("DHS") commenced removal proceedings against Rosillo-Puga by filing a Notice to Appear ("NA") before the immigration

court in Aurora, Colorado. DHS charged Rosillo-Puga as being removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of an aggravated felony (the 1997 battery conviction), as well as removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(I), because he had been convicted of a crime of domestic violence (the same battery conviction, which involved Rosillo-Puga's wife).

Rosillo-Puga appeared *pro se* at a hearing before an IJ and admitted the factual allegations in the NA. Based upon those admissions, the IJ ordered Rosillo-Puga removed to Mexico. Rosillo-Puga did not apply for relief from removal and he waived his right to appeal the removal order. Later in 2003, he was removed to Mexico. Three months following Rosillo-Puga's removal to Mexico, the Seventh Circuit held that a conviction for battery under Indiana law, pursuant to which Rosillo-Puga had been convicted, was not an aggravated felony or a crime of domestic violence for immigration law purposes. Flores v. Ashcroft, 350 F.3d 666 (7th Cir. 2003).

On May 7, 2007, some three-and-one-half years after his removal to Mexico, Rosillo-Puga filed a "Motion to Reconsider and Rescind Removal Order, or in the Alternative to Reopen Proceedings" with the immigration court in Colorado. In his motion, Rosillo-Puga argued that, pursuant to 8 C.F.R. § 1003.23(b)(1), the immigration court could reconsider or reopen his case "at

any time" and that the IJ had discretion to do so *sua sponte*.[1]  Rosillo-Puga

specifically contended that the August 2003 decision to remove him was "based

on an error of law" because the Seventh Circuit had subsequently clarified that his

battery conviction was not an aggravated felony or a crime of violence which

subjected Rosillo-Puga to removal.  Respondent's Mot. at 1, Admin. R. at 63.

Rosillo-Puga further argued that the Flores decision constituted "exceptional

circumstances to invoke the Court's sua sponte jurisdiction."  Id. at 9.

8 C.F.R. § 1003.23(b)(1) contains another provision critical to our decision

in this case:

> A motion to reopen or to reconsider shall not be made by or on
> behalf of a person who is the subject of removal, deportation, or
> exclusion proceedings subsequent to his or her departure from the
> United States.  Any departure from the United States, including the
> deportation or removal of a person who is the subject of exclusion,
> deportation, or removal proceedings, occurring after the filing of a
> motion to reopen or a motion to reconsider shall constitute a
> withdrawal of such motion.

8 C.F.R. § 1003.23(b)(1).  Thus, pursuant to this regulatory provision's post-

departure bar, aliens like Rosillo-Puga who have been removed from the United

States may not file a motion to reopen or reconsider their removal proceeding.  In

his motion to reopen or reconsider, Rosillo-Puga argued that, despite the fact that

---

[1]8 C.F.R. § 1003.23(b)(1) provides in pertinent part:

An Immigration Judge may upon his or her own motion at any time,
or upon motion of the Service or the alien, reopen or reconsider any
case in which he or she has made a decision . . . .

he had departed the United States, the regulation's "at any time" language "permits an Immigration Judge to exercise sua sponte jurisdiction regardless of whether the motion is made pre- or post-departure." Respondent's Motion at 11, Admin. R. at 73. He also argued that his removal to Mexico did not bar his motion to reopen because the deportation bar of 8 C.F.R. § 1003.23(b)(1) "does not apply to those who have already been removed and are therefore no longer 'the subject of removal proceedings.'" Id. at 11-12. Finally, Rosillo-Puga argued that, because of the "at any time" language in § 1003.23 (b)(1), the time limits contained in the statute for motions to reconsider (within thirty days of the entry of the final order of removal) and motions to reopen (within ninety days of the entry of the final order of removal) did not bar his motion.

The IJ denied Rosillo-Puga's motion. While noting that "[i]n most circumstances, an IJ has general discretion to reopen and reconsider proceedings," the IJ concluded that the post-departure bar specifically "precludes the IJ to exercise his general discretion in reopening and reconsidering proceedings under such circumstances." Mem. and Dec. at 2, Admin. R. at 54. Citing Shawnee Tribe v. United States, 423 F.3d 1204, 1213 (10th Cir. 2005), the IJ held that "the general *sua sponte* authority given to an IJ to reopen and reconsider proceedings is limited by the more specific prohibition on making such motions on behalf of a

person who has departed after an order of removal." Id.[2]  The IJ accordingly

denied Rosillo-Puga's motions to reconsider or reopen the proceedings.

Rosillo-Puga appealed the adverse decision to the BIA.  He argued the IJ

committed legal errors in denying his motion to reopen or reconsider because:

there was no conflict between the provision that an IJ can reconsider or reopen a

proceeding "at any time" and the post-departure bar; the post-departure bar did

not apply to those, like him, who had already been removed and were no longer in

removal proceedings; he was not legally removed; the regulation was contrary to

the applicable statute; the regulation was unconstitutional; the Seventh Circuit's

Flores decision constituted "extraordinary circumstances sufficient to invoke sua

sponte authority"; and Rosillo-Puga was not time-barred even though three and

one-half years had elapsed since his removal.  See Notice of Appeal, Admin. R. at

42.  The BIA affirmed the IJ's decision and dismissed Rosillo-Puga's appeal.  The

BIA agreed with the IJ that 8 C.F.R. § 1003.23(b)(1) deprived the immigration

court of jurisdiction over motions to reopen or reconsider made by aliens

subsequent to their departure from the United States.  The Board also agreed with

the IJ's conclusion that the more specific post-departure bar trumps the more

general language giving the IJ authority to reopen or reconsider a proceeding *sua*

---

[2]We stated in Shawnee Tribe that "[i]t is a 'fundamental canon of statutory construction that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs.'"  423 F.3d at 1213 (quoting United States v Groves, 369 F.3d 1178, 1188 n.5 (10th Cir. 2004)).

*sponte*. This petition for review followed. Addressing the issues as the parties have presented them, we deny the petition for review.

## DISCUSSION

### I.     Standard of Review

The BIA in this case issued a single-member brief order, pursuant to 8 C.F.R. § 1003.1(e)(5), affirming the IJ's decision. "We have held . . . that the (e)(5) brief order . . . produces an independent BIA decision that constitutes the final order of [the agency]." Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir. 2006). "Accordingly, in deference to the agency's own procedures, we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." Id. "When reviewing a BIA decision, we search the record for 'substantial evidence' supporting the agency's decision." Sidabutar v. Gonzales, 503 F.3d 1116, 1122 (10th Cir. 2007). "Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." Id. (quoting Uanreroro, 443 F.3d at 1204). We examine questions of law de novo. Turgerel v. Mukasey, 513 F.3d 1202, 1205 (10th Cir. 2008).

## II.    Background of Immigration Laws

We begin by detailing the history of the statute and regulations at issue in this case. The McCarran-Walter Act of 1952 established the structure of current immigration laws, Pub. L. No. 82-414, 66 Stat. 163 (March 27, 1952) (codified at 8 U.S.C. §§ 1101-1537 (1952)). As part of an amendment of the immigration laws in 1961, Congress provided that federal courts could not exercise jurisdiction over deportation and exclusion orders where the alien had departed the United States following issuance of the order. Thus, 8 U.S.C. § 1105a(c)(1962) provided:

> An order of deportation or of exclusion shall not be reviewed by any court if the alien . . . has departed from the United States after issuance of the order.

Three months after the enactment of the 1962 laws, the Attorney General issued implementing regulations, including 8 C.F.R. § 3.2, titled "Reopening or reconsideration before the [BIA]." That regulation paralleled § 1105a(c), and provided:

> [A] motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.

8 C.F.R. § 3.2 (1962) (currently 8 C.F.R. 1003.2(d)). 8 C.F.R. § 1003.23(b)(1) contains identical language governing motions to reopen or reconsider filed before an IJ. From the early 1960s until 1996, 8 U.S.C. § 1105a(c) remained unchanged from that 1961 version, as did the language of the regulations regarding motions to reopen or reconsider before an IJ and the BIA. All barred post-departure motions to reopen or reconsider. In April 1996, the Attorney General amended 8 C.F.R. § 3.2 and added numerical and time limits for motions to reopen and to reconsider, as well as prescribed contents for such a motion. The post-departure bar remained.

In September 1996, Congress made major reforms to immigration law through its enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009. Among other things, the IIRIRA repealed the statutory bar to judicial review of deportation orders when the alien had departed the country and codified and enacted procedures governing the filing of motions to reopen. See William v. Gonzales, 499 F.3d 329, 330 (4th Cir. 2007). Thus, the current statute governing motions to reopen and reconsider provides that "[t]he alien may file one motion to reconsider a decision that the alien is removable from the United States," 8 U.S.C. § 1229a(c)(6)(A), and that such a motion must be filed "within 30 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(6)(B). Furthermore, "[a]n alien may file one motion to reopen

proceedings under this section," 8 U.S.C. § 1229a(c)(7)(A), which motion must, in general, be filed "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(I). The statute also details the required content of motions to reopen or reconsider, as well as exceptions from both the numerical limit of one motion to reopen and the time period for filing such a motion. See 8 U.S.C. § 1229a(c)(7)(A)-(C). The statute does not, however, contain any explicit post-departure bar to review, which, as indicated above, had previously existed in former 8 U.S.C. § 1105a(c).

On March 6, 1997, the Attorney General promulgated regulations implementing the IIRIRA. The regulations retained the post-departure bar for motions to reopen before an IJ and the BIA:

> A motion to reopen or . . . reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings, subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen . . . or reconsider, shall constitute a withdrawal of such motion.

(currently 8 C.F.R. § 1003.2(d)). Virtually identical language bars post-departure review before the IJ. See 8 C.F.R. § 1003.23(b)(1). Thus, the regulations continue to contain a post-departure bar to motions to reopen or reconsider before both the IJ and the BIA. Indeed, the Attorney General specifically discussed the

-10-

continuing validity of the post-departure bar in the notice and comment process

for the regulations implementing the IIRIRA:

> No provision of the new section 242 of the [INA] supports reversing the long established rule that a motion to reopen or reconsider cannot be made in immigration proceedings by or on behalf of a person after that person's departure from the United States . . . .  The Department [of Justice] believes that the burdens associated with the adjudication of motions to reopen and reconsider on behalf of deported or departed aliens would greatly outweigh any advantages this system might render.

Inspection and Expedited Removal of Aliens; Conduct of Removal Proceedings;

Asylum Procedures, 62 Fed. Reg. 10,312, 10,321 (March 6, 1997).

## III.    Validity of 8 C.F.R. § 1003.2(d) and .23(b)(1)

### A.

The validity of the regulations continuing to impose a post-departure bar,

and their applicability to Rosillo-Puga, are at the heart of this case.  William, 499

F.3d 329, the only court to directly address the validity of these regulations, has

determined that the regulations are invalid because they "conflict[] with the

statute [8 U.S.C. § 1229a(c)(6)(A) and (7)(A)] by restricting the availability of

motions to reopen to those aliens who remain in the United States."  Id. at 334.[3]

_____

[3]We note that the Supreme Court recently tangentially discussed the departure bar in Dada v. Mukasey, 128 S. Ct. 2307 (2008).  In Dada, the Supreme Court addressed a dilemma faced by certain aliens:

> the alien who is granted voluntary departure but whose circumstances
>
> (continued...)

-11-

"'The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.'" Lee v. Mukasey, 527 F.3d 1103, 1106 (10th Cir. 2008) (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984)). "We begin by analyzing the plain language employed by Congress, and we 'must give words their ordinary or natural meaning.'" Id. (quoting Leocal v. Ashcroft, 543 U.S. 1, 8-9 (2004)). Finally, "[w]hen a court reviews an agency's construction of the statute which it administers," it must first answer "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S.

---

[3](...continued)
have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: He or she can leave the United States in accordance with the voluntary departure order; but, pursuant to [8 C.F.R. § 1003.2(d)], the motion to reopen will be deemed withdrawn. Alternatively, if the alien wishes to pursue reopening and remains in the United States to do so, he or she risks expiration of the statutory period and ineligibility for adjustment of status, the underlying relief sought.

Id. at 2318 (citations omitted). The Court held that an alien should be allowed to withdraw his or her motion for voluntary departure, in order to pursue a motion to reopen. The very problem identified by the Supreme Court in Dada would not exist but for the validity of the regulation challenged here—the alien's motion to reopen would not be withdrawn but for the regulation. See Matter of Armendarez-Mendez, 24 I & N Dec. 646, 655 n.7 (BIA 2008) ("We perceive some tension . . . between William and the Supreme Court's recent precedent in Dada v. Mukasey, . . . which treated the departure bar as a valid constraint on the Board's authority to adjudicate motions filed by the beneficiaries of voluntary departure orders. Such treatment was essential to the Dada Court's portrayal of the problem to be remedied.") (citation omitted). We are aware, however, that neither party in Dada specifically challenged the validity of the regulations at issue.

at 842.  "If congressional intent is clear from the statutory language, the inquiry is over, and both the court and the agency 'must give effect to the unambiguously expressed intent of Congress.'"  Lee, 527 F.3d at 1106 (quoting Chevron, 467 U.S. at 842-43).  "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Ochieng v. Mukasey, 520 F.3d 1110, 1114 (10th Cir. 2008) (quoting Chevron, 467 U.S. at 843).

In accordance with Chevron, we begin with the plain language of the statute, 8 U.S.C. § 1229a(c)(6) and (7):  "The alien may file one motion to reconsider a decision that the alien is removable from the United States." 8 U.S.C. § 1229a(c)(6)(A).  "An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv)."  Id. § 1229a(c)(7)(A).

As indicated, the William court is the only court to specifically address the clarity or ambiguity of this statute and whether the regulations providing a post-departure bar conflict with the statute.  The majority in William concluded "that § 1229a(c)(7)(A) unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is within or without the country." William, 499 F.3d at 332.  The court marshaled several arguments in support of its conclusion.  First, the Fourth Circuit observed that "in providing that '*an alien*

-13-

may file,' the statute does not distinguish between those aliens abroad and those within the country—both fall within the class denominated by the words 'an alien.'" Id. Thus, the court concluded that "Congress unambiguously addressed, and at least implicitly repealed, the regulatory post-departure bar by granting 'an alien' the right to file one motion to reopen." Id.

Second, the Fourth Circuit found that the:

overall structure of § 1229a reenforces [its] reading of § 1229a(c)(7)(A) in two ways. First, the fact that Congress provided for specific limitations on the right to file a motion to reopen bolsters the conclusion that § 1229a(c)(7)(A) cannot be read to except from its terms those aliens who have departed the country. Second, and more importantly, in detailing the time limit for a motion to reopen, Congress provided that the usual 90-day limit does not apply where an alien who is applying for relief from removal as a victim of domestic violence "*is physically present in the United States at the time of filing the motion*."

William, 499 F.3d at 333 (quoting 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV)) (internal citation and quotation omitted). Given that Congress did not include the physical presence requirement in § 1229a(c)(7)(A), the Fourth Circuit drew "a 'negative inference' from Congress' exclusion of the physical presence requirement from the statutory section under consideration." Id. (noting that where Congress "includes particular language in one section of a statute but omits it in another section of the same Act . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (citing Hamdan v. Rumsfeld, 126 S. Ct. 2749, 2765 (2006)) (internal quotations omitted).

-14-

Further, the court observed that "finding that physical presence in the United States is required before *any* motion to reopen may be filed would render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplusage." Id. "In sum, Congress knew how to include a requirement of physical presence when it wished to do so, as it did in § 1229a(c)(7)(C)(iv)(IV). That it did not do so in the general provisions of § 1229a(c)(7)(A) leads us to conclude that Congress did not make presence in the United States a prerequisite to filing a motion to reopen." Id.

Having found that § 1229a(c)(7)(A) "clearly and unambiguously grants an alien the right to file one motion to reopen, regardless of whether he is present in the United States when the motion is filed," the Fourth Circuit declared that 8 C.F.R. § 1003.2(d), containing the post-departure bar on motions to reopen, "conflicts with the statute . . . [and] lacks authority and is invalid." Id. at 334. The same reasoning would support the same conclusion with respect to 8 C.F.R. § 1003.23(b)(1).

Calling it "a close question," the lengthy dissent to the majority's decision in William explained its conclusion that "8 C.F.R. § 1003.2(d) remains a valid exercise of the Attorney General's congressionally-delegated rulemaking authority under the [Immigration and Nationality Act]." Id. at 335. The dissent also developed many arguments supporting its view that Congress did not intend to, in effect, repeal the Attorney General's regulations.

-15-

First, applying the first part of the <u>Chevron</u> analysis, the dissent concluded that "§ 1229a(c)(7)(A) in isolation says nothing about the departure bar in 8 C.F.R. § 1003.2(d) or about whether the statute as a whole should be construed as repealing the departure bar." <u>William</u>, 499 F.3d at 336 (Williams, C.J., dissenting). It rejected the majority's arguments about the domestic-violence exception, noting that the "physical presence" requirement in the domestic-violence exception was enacted after the IIRIRA, and thus shed no light on Congressional intent at the time the IIRIRA was enacted, and noting, further, that the physical-presence requirement is not coextensive with the regulatory departure bar.[4] The dissent also noted that "a nearly identical provision limiting aliens to one motion to reopen existed *before* enactment of the IIRIRA, and in the *same* regulation containing the departure bar now located in § 1003.2(d)," which undermined the "majority's conclusion that § 1229a(c)(7)(A) by itself repeals the departure ban in 8 C.F.R. § 1003.2(d)." <u>Id.</u> at 334-35.

Next, after rejecting the majority's conclusion that the statute unambiguously amounts to a repeal of a post-departure bar, and thereby invalidates the regulations, the dissent went on to explain its view that the statute contains no such unambiguous directive:

---

[4]8 U.S.C. § 1229a(c)(7)(C)(iv)(IV), the domestic violence exception to the limit of one motion to reopen, only requires the alien to be physically present when the motion to reopen is filed. The departure bar in the regulations provides that any departure effects a withdrawal of a previously filed motion, thereby requiring continuous presence in the United States.

> Congress has said nothing explicitly about the propriety of a departure bar like the one in § 1003.2(d). William argues that because Congress codified every provision of the regulatory framework but the departure bar, that omission must have been intentional, but the obvious response to this argument is that Congress is presumed to have known about and approved of the departure bar when it amended the INA without explicitly repealing it. Congress often expressly repeals both statutory provisions[] and regulations, and it is reasonable to expect that Congress will speak with greater clarity in overruling long-held agency interpretations like the departure bar at issue here. Either way, the focus in this case inevitably shifts to what Congress *did not do or say*, which is a good sign that the <u>Chevron</u> inquiry must progress past step one.

<u>Id.</u> at 341 (internal citations omitted).

Having concluded that the statute is silent and that the agency is empowered by statute to fill in gaps in the regulatory scheme,[5] the dissent proceeded to the second step of the <u>Chevron</u> analysis and determined whether the agency's interpretation as expressed in the regulations is "reasonable in light of the legislature's revealed design." <u>NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.</u>, 513 U.S. 251, 257 (1995). Under this deferential standard, we must give the agency's interpretation "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." <u>Household Credit Servs., Inc. v. Pfenning</u>, 541 U.S. 232, 239 (2004). After noting that the statute addressed petitions for judicial review, whereas the regulations addressed motions to reopen before the IJ and BIA, the dissent observed the differences between the

---

[5]Congress has expressly delegated rule-making authority to the Attorney General to promulgate rules implementing the immigration laws. <u>See</u> 8 U.S.C. § 1103(g)(2).

two venues are critical to explaining why Congress repealed the statutory post-departure bar but did not explicitly repeal the regulatory post-departure bars to motions before the agency: "A petition for review of a final order of removal represents an alien's first and only opportunity for judicial review of the merits of the order, whereas a motion to reopen seeks a *subsequent* opportunity for administrative review." William, 499 F.3d at 343 (Williams, C.J., dissenting). As the dissent further explained:

> The differences between a petition for judicial review and a motion to the BIA to reopen proceedings . . . largely explain why Congress repealed the departure bar to judicial review and acquiesced in the continued application of the Attorney General's departure bar to BIA review. Given that the IIRIRA streamlined the rules and procedures of the INA to make it easier for the BIA to deport aliens, Congress surely must have understood that the result would be that many more aliens would be removed during the pendency of their judicial proceedings. Repealing § 1105a(c) ensured that the expedited removal of aliens would not cut off their one-and-only chance at judicial review of the merits of their removal order. But I cannot impute to Congress a similar intention to free the motion to reopen from the workings of the departure bar, given the motion's disfavored status.

Id. Thus, "Congress's repeal of the departure bar to judicial review of final removal orders has little or no bearing on the validity of the regulation's departure bar to BIA review of motions to reopen." Id. See Pena-Muriel v. Gonzales, 489 F.3d 438, 442 (1st Cir. 2007) (determining that Congress's repeal of § 1105a(c) "does not remotely support an argument that Congress also intended, implicitly, to allow post-departure petitions to reopen a closed

-18-

administrative proceeding"). This is particularly so, given the considerable discretion and authority vested in the Attorney General to control and determine the way its agency reviews immigration decisions. See Uanreroro, 443 F.3d at 1203.

The dissent finally reached the ultimate question—whether the regulations are contrary to the statute. It concluded:

> Given the INA's silence with respect to the departure bar, I understand Congress's failure to explicitly repeal 8 C.F.R. § 1003.2(d) as acquiescence to its continued operation. The regulation containing the departure bar, a provision aimed at promoting finality in removal proceedings, has been the long-standing view of the Attorney General, 'a view that we [must] presume Congress understood when it amended the Act in [1996].' This presumption is especially strong here, for the Attorney General's regulation was 'fresh' when Congress enacted the IIRIRA, having been promulgated only a few months before Congress passed the IIRIRA.

William, 499 F.3d at 344. Accordingly, the dissent held that the Attorney General's regulations were a valid exercise of its regulatory authority and did not contravene the statute.

We agree with the dissent's position and conclude that 8 C.F.R. § 1003.23(b)(1) (like 8 C.F.R. § 1003.2(d)) is a valid exercise of the Attorney General's Congressionally-delegated rulemaking authority, and does not contravene 8 U.S.C. § 1229a(c)(6)(A) or (7)(A). Specifically, we agree that, at the first step of the required Chevron analysis, the statute is simply silent on the issue of whether it meant to repeal the post-departure bars contained in the

-19-

Attorney General's regulations. We certainly cannot derive a clear meaning from the language about "an alien" or "the alien" having the opportunity to file "one" motion for reopening or reconsideration. The William dissent provides a thorough analysis of this point, and we agree with its discussion. See also, Pena-Muriel, 489 F.3d at 442 ("Congress remained silent regarding the long-standing regulatory bar imposed by 8 C.F.R. § 1003.23(b)(1).").

Having concluded that the statute is not clear and unambiguous, we turn to the second Chevron inquiry—"whether the agency's answer is based on a permissible construction of the statute." Ochieng, 520 F.3d at 1114 (quoting Chevron, 467 U.S. at 843). As stated above, "where Congress has not merely failed to address a precise question but has also made an explicit delegation of rulemaking authority to the agency, 'the agency's regulation is given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" William, 499 F.3d at 335 (quoting Household Credit Servs., Inc., 541 U.S. at 239). For the reasons explained in the William dissent, we uphold the regulations as valid under the statute. The regulations address the agency's treatment of motions to reopen, not judicial review over final orders. We further find it inconceivable that Congress would repeal the post-departure bar, without doing or even saying anything about the forty-year history of the Attorney General incorporating such a bar in his regulations. In short, we are not persuaded that Rosillo-Puga's argument that, by negative inference, Congress intentionally swept

-20-

away forty years of continuous practice by the Attorney General. It is "well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 846 (1986) (internal quotations omitted). See Matter of Armendarez-Mendez, 24 I & N Dec. 646 (BIA 2008) (specifically rejecting the analysis of the William majority).

The dissent to this opinion relies upon quotations from Dada (a case not cited to us by either party) to support its view that the regulations at issue are invalid. In our view, Dada speaks more to status than procedure, and an alien in voluntary departure proceedings has a different status than an alien who has been removed:

> In many ways the structure of the present immigration system is predicated on the assumption that the physical removal of an alien from the United States is a transformative event that fundamentally alters the alien's posture under the law. Indeed, the ultimate purpose of a removal proceeding is, with respect to removable aliens, precisely to bring about such a physical departure. As a rule, once an alien has been removed, his underlying removal order is deemed executed, the proceedings that led to that order are consummated, and whatever immigration status the removed alien may have possessed before departure is vitiated. . . .
>
> The consequence of departure for a removed alien is thus not just physical absence from the country, but also a nullification of legal status, which leaves him in no better position after departure than *any other alien* who is outside the territory of the United States.

-21-

> In fact, an alien who physically departs the United States after being ordered removed is in a substantially *less* advantageous position than other aliens, because the existence of a removal order renders him or her inadmissible and vulnerable to heightened criminal sanctions and expedited removal procedures in the event of unlawful reentry.

Matter of Armendarez-Mendez, 24 I & N Dec. 646, 655-56 (2008). Thus, we do not view Dada as implicitly supporting the view that the regulations are invalid.

**B.**

There is an alternative basis for denying Rosillo-Puga's petition for review. As the facts set forth above indicate, Rosillo-Puga filed his motion to reconsider and/or reopen some three-and-one-half years after his removal to Mexico. Section 1229a(c)(6)(B) provides that a motion to reconsider "must be filed within 30 days of the date of entry of a final administrative order of removal," and section 1229a(c)(7)(C)(i) provides that a motion to reopen "shall be filed within 90 days of the date of entry of a final administrative order of removal." Thus, Rosillo-Puga's motions were untimely. While Rosillo-Puga's counsel suggested at oral argument that such time limits are subject to various tolling provisions, no one has made a serious argument that Rosillo-Puga's motions would be viewed as timely filed. Accordingly, we conclude, as the Fifth Circuit did recently, that Rosillo-Puga's petition was untimely. See Ovalles v. Holder, 2009 WL 2222883 (5th Cir. July 27, 2009). That basis similarly distinguishes this case from the majority's position in William.

-22-

Furthermore, there is an additional ground upon which to rule against Rosillo-Puga:  waiver.  While he has suggested that the time limits applicable to a petition to reopen or reconsider are mere rules of procedure, rather than jurisdictional impediments, there is no doubt that he has waived any argument that he should be excused from those procedural requirements.  Accordingly, Rosillo-Puga's petition fails for this alternative reason.

## IV.    Application of Regulations

Assuming the validity of the regulations, which we have found, Rosillo-Puga argues alternatively that 8 C.F.R. § 1003.23(b)(1) does not apply to those aliens who have already been removed.  He relies upon the Ninth Circuit's decision in Lin v. Gonzales, 473 F.3d 979 (9th Cir. 2007), in support of this argument.  The regulation states that a motion to reopen or reconsider "shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings."  8 C.F.R. § 1003.23(b)(1).  The Ninth Circuit held that the "regulation is phrased in the *present* tense and so by its terms applies only to a person who departs the United States while he or she '*is* the subject of removal . . . proceedings.'"  Lin, 473 F.3d at 982.  Accordingly, "[b]ecause petitioner's original removal proceedings were completed when he was removed . . . , he did not remain the subject of removal proceedings after that time."  Id.

The government urges us not to follow <u>Lin</u>, arguing that it misinterpreted the plain language of the regulations:

> A plain reading of both regulations[6]shows they aim to bring finality to the immigration process by preventing an alien from filing a motion to reopen after having departed the United States. The [Ninth Circuit] erred because while the regulations speak in terms of an alien who "is the subject of" removal proceedings, the regulations do not link the term "is" to the time of departure. Rather, "is" refers to an alien who at some point is in proceedings, regardless of whether he or she departs during or after those proceedings.

Respondent's Br. at 21. The government finds reinforcement for that interpretation in the next sentence of the regulations, which states "[a]ny departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion." 8 C.F.R. § 1003.2(d); 8 C.F.R. § 1003.23(b)(1). The government argues "[t]hat sentence also speaks in terms of an alien who 'is the subject' of removal proceedings, but necessarily deals with departures after the completion of proceedings." Respondent's Br. at 22.

We agree with the government that <u>Lin</u>'s interpretation of the regulation is problematic. Quite simply, it seems illogical to discuss motions to reopen filed by aliens *in* proceedings, as typically, a motion to reopen will be filed only by one whose proceedings are completed, and, thus, need to be "reopened." By contrast,

---

[6]The government refers to both 8 C.F.R. § 1003.23(b)(1) and § 1003.2(d), which contain identical language.

-24-

the regulation as a whole makes sense if it addresses motions to reopen filed by those aliens who have departed following the completion of their deportation/removal proceedings, and wish to reopen them. We therefore reject Rosillo-Puga's interpretation of the regulation. See Matter of Armendarez-Mendez, 24 I & N Dec. 646 (BIA 2008) (specifically rejecting the Lin court's interpretation of the regulation); see also Ovalles, 2009 WL 2222883, at **8-10 (rejecting identical argument).

Rosillo-Puga also argues, alternatively, that the regulation is arbitrary and capricious as applied to him because it fails to account for the fact that his order of removal was premised on a characterization of his conviction that was subsequently overturned; that the IJ and BIA should have considered his motion *sua sponte*; and that the agency's application of the regulation violated his due process rights. We note that the Fifth Circuit has recently rejected the identical arguments, and we agree with that court's analysis. See Ovalles, 2009 WL 2222883, at **7-11.

Rosillo-Puga argues that the "IJ's removal order is invalid because it is based on an erroneous interpretation of the definition of a crime of violence." Pet'r's Br. at 27. While Rosillo-Puga cites some cases arguably supporting his position, as the government points out, there is ample authority to the contrary. For example, in Navarro-Miranda v. Ashcroft, 330 F.3d 672 (5th Cir. 2003), a case very similar factually to this case, the petitioner had previously been

-25-

deported based on a drunk driving conviction, and he argued, post-departure, that the BIA should have *sua sponte* reopened his proceedings because an intervening circuit court decision held that a drunk driving conviction was not a deportable offense. The BIA declined to invoke its *sua sponte* authority, noting that the more specific post-departure bar trumped the more general *sua sponte* authority provision. In denying the petition for review, the Fifth Circuit observed that "[t]he Board's conclusion . . . is consistent with the well-established principle that 'a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule.'" Id. at 676 (quoting Teague v. Lane, 489 U.S. 288, 308 (1989)); see also Patel v. Atty. Gen., 334 F.3d 1259, 1262 (11th Cir. 2003) (dismissing petition where petitioner's prior conviction was subsequently found by state court to not constitute a deportable defense, saying "we perceive no theory under which the subsequent action of a state court could confer jurisdiction upon us that would not otherwise exist"). Thus, we cannot say that the BIA's decision was arbitrary and capricious. See Ovalles, 2009 WL 2222883, at **7-9.

Next, the IJ and BIA found that "when there is an apparent conflict between a specific provision and a more general one, the more specific one governs." Memorandum & Dec at 2, Admin. R. at 54; see also Order at 1, Admin. R. at 2. As we stated in Shawnee Tribe, "[i]t is a fundamental canon of statutory construction that, when there is an apparent conflict between a specific provision

-26-

and a more general one, the more specific one governs." 423 F.3d at 1213

(further quotation omitted). That general rule has been specifically applied to the

regulations at issue here. See Navarro-Miranda, 330 F.3d at 676 ("[T]he BIA's

reasoning that the prohibition on motions to reopen stated in § 3.2(d) [post-

departure bar] overrides its § 3.2(a) power to reopen on its own motion is a

reasonable interpretation of these two regulations."); see also Mansour v.

Gonzales, 470 F.3d 1194, 1198 (6th Cir. 2006). Furthermore, we have held that

"we do not have jurisdiction to consider petitioner's claim that the [Board] should

have sua sponte reopened the proceedings under 8 C.F.R. § 1003.2(a) because

there are no standards by which to judge the agency's exercise of discretion."

Infanzon v. Gonzales, 386 F.3d 1359, 1361 (10th Cir. 2004). Thus, we perceive

no error in the BIA's decision that, notwithstanding its *sua sponte* authority to

consider motions to reopen, it declined to reopen Rosillo-Puga's proceedings in

this case.[7] See Ovalles, 2009 WL 2222883, at **6-8.

Finally, Rosillo-Puga argues that the BIA's application of the regulatory

bar to his case violated his due process rights. We disagree. "It is well-

established that aliens are entitled to due process in deportation proceedings."

Pena-Muriel, 489 F.3d at 443. "In this context, due process requires that the alien

receive notice of the charges against him, and a fair opportunity to be heard

_____

[7]We note that the BIA has recognized that it may reopen or reconsider a case *sua sponte* in "exceptional circumstances." See, e.g., In re J-J, 21 I & N. Dec. 976 (BIA 1997).

-27-

before an executive or administrative tribunal." Id. Rosillo-Puga received due process in his deportation proceedings. At the time of his removal, he had been convicted of a crime that warranted his removal. He received all appropriate process before the immigration authorities, he did not seek relief from the removal order, and he waived his right to appeal the removal order. He made no attempt to alter the status of his conviction before he left the country. Now, Rosillo-Puga attempts to reopen proceedings that ended roughly five years ago, and five years following his departure. "Due process does not require continuous opportunities to attack executed removal orders years beyond an alien's departure from the country. Indeed, there is a strong public interest in bringing finality to the deportation process." Id.

## CONCLUSION

We accordingly DENY the petition for review of the BIA's decision.

07-9564, *Rosillo-Puga v. Holder, Jr.*

**O'BRIEN**, J, concurring.


Although the parties have argued more broadly, the principal issue

presented by this case is narrow – whether an <u>untimely</u> petition to reopen or to

reconsider, as it relates to an Immigration Judge (IJ), is subject to the post-

departure bar found in 8 C.F.R. § 1003.23(b)(1).  That issue was resolved to my

satisfaction by the Fifth Circuit in *Ovalles v. Holder*, -- F.3d --, 2009 WL

2222883 (5th Cir. July 27, 2009).  In addressing Ovalles' argument that the post-

departure bar, as it relates to the Board of Immigration Appeals (BIA), was at

odds with 8 U.S.C. § 1229a(c)(6)(A) and (c)(7)(A) [providing an alien the right to

file one motion to reopen or to reconsider], the court said "Ovalles invokes

statutory provisions that offer him no relief," *id.* at \*5, because his motion to

reopen or reconsider was considerably out of time.[1]

The same is true here; a timely motion to reopen or reconsider is not before

us.  Rosillo-Puga did not file his motion to reopen and/or reconsider until 3½

years after his removal,[2] well beyond the 30 and 90 day time limits provided by

---

[1] The post-departure bar applicable to the BIA, 8 C.F.R. § 1003.2(d), and
that applicable to the IJ, 8 C.F.R. § 1003.23(b)(1), are equivalent. *See* Majority
Op. at 10, 25, 20.

[2] And it was filed more than three years after the Seventh Circuit decision
upon which he rests his claims. *See Flores v. Ashcroft*, 350 F.3d 666 (7th Cir.
2003); *see also Ovalles*, 2009 WL 2222883 at \*5 (motion to reopen or reconsider
(continued...)

statute.  *See* 8 U.S.C. § 1229a(c)(6)(A), (7)(A) (absent circumstances not present

here, *see* 8 U.S.C. § 1229a(c)(7)(C)(ii)-(iv), a motion to reconsider and a motion

to reopen must be filed within 30 days and 90 days, respectively, of the date of

entry of the removal order).

And we need not be distracted by worrying whether the time limits for

filing such motions are jurisdictional or subject to equitable considerations.  If

Rosillo-Puga had equitable arguments against enforcing the statutory time limits

he could have filed his motion to reopen and/or reconsider and asserted them;

there would be no need for his attempted end run around the statutes by appealing

to the IJ to exercise *sua sponte* authority to reopen or reconsider under 8 C.F.R. §

1003.23(b)(1).  He waived any claim to consideration of equitable factors by his

litigation strategy.[3]  In the words of the Fifth Circuit: "[B]ecause [§§] 1229a(c)(6)

---

[2](...continued)
filed eight months after the Supreme Court decision relied upon as basis to reopen
or reconsider).

[3] Moreover, Rosillo-Puga expressly acknowledged the untimeliness of his
motion to reopen and/or reconsider in the agency proceedings.  As the IJ stated in
his order denying the motion: "[Rosillo-Puga] acknowledges in his motion that he
is barred from seeking a motion to reconsider or to reopen due to the time
constraints of 8 C.F.R. § 1003.23(b)(1) (2007).  [He] requests the Immigration
Judge ("IJ") to exercise his *sua sponte* authority under 8 C.F.R. § 1003.23(b)(1)
to reconsider and rescind his order of removal."  (R. Vol. I at 46.)  The
government defended against Rosillo-Puga's motion before the agency based on
its untimeliness, arguing: "The current motion is dated May 2, 2007,
approximately 3½ years after the final [removal] decision.  The court is without
jurisdiction to consider this motion (he was removed and it is filed outside the 30
days for motions to reconsider and 90 days for a motion to reopen).  8 C.F.R.

(continued...)

and 1229a(c)(7) . . . do not grant [Rosillo-Puga] the right to have his facially and concededly untimely motion heard by the [IJ], he cannot rely on those statutory provisions as a basis for contending that the [IJ] was required to give *sua sponte* consideration to the merits of his . . . motion to reconsider or reopen . . . ." *Ovalles,* 2009 WL 2222883, at *6.

I would have preferred to decide this issue on the narrow grounds outlined (and convincingly explained by the Fifth Circuit). It is tempting to concur in all but Part III(A) of Judge Anderson's excellent opinion. But doing so would leave the issue presented for our review unresolved in this circuit.[4] For that reason, I join Judge Anderson's opinion in full.

---

[3](...continued)
section 1003.23." (*Id.* at 55.)

[4] *Compare Arizona v. Gant*, 129 S. Ct. 1710, 1725 (2009) (Scalia, J., concurring).

07-9564, <u>Rosillo-Puga v. Holder, Jr.</u>

**LUCERO**, J., dissenting.


My respected colleagues in the majority conclude that 8 U.S.C. § 1229a is silent on the question of whether, subsequent to departure from the United States, an alien may file a motion to reconsider removability under § 1229a(c)(6)(A), or a motion to reopen removal proceedings under § 1229a(c)(7)(A).  In addition, the majority holds that an Immigration Judge ("IJ") lacks the power to <u>sua sponte</u> reconsider or reopen an alien's case after an alien has departed from the United States.  I disagree with both conclusions.

As to the first holding, as I read the statute, the pertinent provisions of § 1229a(c)(6)(A) and (7)(A) unambiguously guarantee every alien the right to file one motion to reconsider removability and one motion to reopen removal proceedings, regardless of whether the alien has departed from the United States.  For this reason alone, I would invalidate the challenged portion of 8 C.F.R. § 1003.23(b)(1) under the first step of <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984).  The Supreme Court's recent decision in <u>Dada v. Mukasey</u>, 128 S. Ct. 2307 (2008), all but compels such invalidation.  As to the second holding, the post-departure bar within § 1003.23(b)(1) is consistent with the language authorizing sua sponte reconsideration or reopening by an IJ.  Because there is no conflict between these

provisions, an IJ retains the authority to sua sponte reconsider or reopen a proceeding even following an alien's departure from the United States.

Today's majority ruling creates a circuit split,[1] rests on a dubious interpretation of § 1229a(c)(6)(A) and (7)(A), disregards the clear import of Dada, and imagines a conflict between two portions of the regulation before us when there is none.

## I

Under Chevron, "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  467 U.S. at 843 n.9.  A plain reading of 8 U.S.C. § 1229a(c)(6)(A) and (7)(A) comfortably occupies all the space on the issue before us and leaves any potential for valid promulgation of the challenged portion of 8 C.F.R. § 1003.23(b)(1) outside in the bitter cold.  As the Court said in Chevron, "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  467 U.S. at 842-43.  If there be any doubt as to the plain reading of § 1229a(c)(6)(A) and (7)(A), Dada puts it to rest.

---

[1] Specifically, the majority's holding regarding the validity of 8 C.F.R. § 1003.23(b)(1) squarely conflicts with the conclusion reached by the Fourth Circuit in William v. Gonzales, 499 F.3d 329, 334 (4th Cir. 2007).

# A

## 1

Section 1229a(c)(6)(A) provides, "The alien may file one motion to reconsider a decision that the alien is removable from the United States," and § 1229a(c)(7)(A) provides, "An alien may file one motion to reopen proceedings under this section . . . ."[2] The language Congress chose is plain and unequivocal. It draws no distinction between aliens who are in the country and aliens who have departed. All aliens are treated alike under the terms of § 1229a(c)(6)(A) and (7)(A), and all aliens are guaranteed the right to file one motion to reconsider and one motion to reopen. William v. Gonzales, 499 F.3d 329, 332 (4th Cir. 2007) ("We find that § 1229a(c)(7)(A) unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is within or without the country."); see Azarte v. Ashcroft, 394 F.3d 1278, 1285-86 (9th Cir. 2005) ("With respect to motions to reopen . . . , Congress' language in IIRIRA is clear and unambiguous: 'An alien may file one motion to reopen proceedings.'" (quoting § 1229a(c)(6)(A) (2004)) (footnote omitted)).[3] The post-departure bar, which

---

[2] These sections were added as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA" or the "Act"), Pub. L. No. 104-208, div. C, § 304, 110 Stat. 3009-546, 3009-593 (1996).

[3] At the time of the Ninth Circuit's decision in Azarte, motions to reconsider were governed by § 1229a(c)(5) and motions to reopen were governed by § 1229a(c)(6). In 2005, Congress amended § 1229a, redesignating subsection (c)(5) as (c)(6) and (c)(6) as (c)(7). See Real ID Act of 2005, Pub. L. No. 109-13,

(continued...)

-3-

prohibits departed aliens from filing a motion to reconsider or reopen, conflicts with this unambiguous statutory language.  <u>See</u> 8 C.F.R. § 1003.23(b)(1).[4]

Despite this clear language, the majority concludes that § 1229a(c)(6)(A) and (7)(A) are silent on the question of whether a certain subclass of aliens— those who have departed the United States—may file one motion to reconsider and reopen.  Maj. Op. at 19.  Surely this cannot be correct.  Sections 1229a(c)(6)(A) and (7)(A) speak in absolute and unequivocal terms:  "<u>The alien</u>

---

[3](...continued)
div. B, § 101(d)(1), 119 Stat. 302, 304 (2005).

[4] The regulation setting forth the post-departure bar provides:

> An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals. . . . <u>A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States</u>. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.

8 C.F.R. § 1003.23(b)(1) (emphasis added).  It is the emphasized portion of this section that Rosillo-Puga has challenged, and that I refer to throughout as "the post-departure bar."

A parallel regulation, which applies to the Board of Immigration Appeals ("BIA") rather than to IJs, appears at 8 C.F.R. § 1003.2.  In <u>William</u>, the Fourth Circuit invalidated the post-departure bar contained in § 1003.2(d).  499 F.3d at 334.

may file one motion to reconsider," § 1229a(c)(6)(A) (emphasis added), and "[a]n alien may file one motion to reopen," § 1229a(c)(7)(A) (emphasis added). My colleagues conclude not that Congress was silent regarding which aliens may file motions, but rather, that Congress was silent regarding whether any subclass of aliens might nonetheless be excluded. Maj. Op. at 19. Under the majority's approach, Chevron would require that Congress expressly enumerate all that an agency cannot do before we may conclude that Congress "has directly spoken to the precise question at issue." See 467 U.S. at 842. The majority would thus preclude customary expression of Congressional intent by the use of expansive and inclusive permissions such as those in § 1229a(c)(6)(A) and (7)(A).

My colleagues' reasoning conflicts with the thrust of Chevron: we are to initially look at the plain language of an act, and if there be any doubt, only then are we to look to the intent of Congress using additional tools of statutory construction. Id. at 843 n.9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."). On the issue before us, a plain reading of the text of the statute compels the conclusion that § 1229a(c)(6)(A) and (7)(A) unambiguously guarantee all aliens the right to file one motion to reconsider and one motion to reopen.

Before today, we have followed the dictates of Chevron, giving effect to the clear intent of Congress in determining whether a regulation is consistent with

the governing act. For example, in <u>Lee v. Gallup Auto Sales, Inc.</u>, we invalidated a regulation that exempted from the Odometer Act a subclass of motor vehicles which were neither explicitly nor implicitly exempted under the terms of the pertinent statute. 135 F.3d 1359, 1360-62 (10th Cir. 1998). Under the terms of the Odometer Act, a transferor was required to disclose certain information whenever ownership of "<u>a</u> motor vehicle" was transferred. <u>Id.</u> at 1360 (quoting 15 U.S.C. § 1988(a) (1993) (current version at 49 U.S.C. § 32705 (2008))) (emphasis added). Nevertheless, the Secretary of Transportation promulgated a regulation exempting from the disclosure requirements those motor vehicles ten years old or older. <u>Id.</u> (citing 49 C.F.R. § 580.6(a)(3) (1993) (current version at 49 C.F.R. § 580.17(a)(3) (2008))). "Because the text of the Odometer Act d[id] not even suggest—much less explicitly state—a legislative intent to exempt entire classes of vehicles from the disclosure requirements of the Act," we invalidated the regulation as contrary to the clear meaning of the statute. <u>Id.</u> at 1361 (quotation omitted); <u>see also</u> <u>Suiter v. Mitchell Motor Coach Sales, Inc.</u>, 151 F.3d 1275, 1280-81 (10th Cir. 1998) (invalidating a regulation that exempted from the disclosure requirements of the Odometer Act those vehicles with a gross vehicle weight rating in excess of 16,000 pounds because the Act was unambiguous in its failure to authorize such an exemption).

In this case, the language of § 1229a(c)(6)(A) and (7)(A) does not evince a congressional intent to exclude subclasses of aliens from the statutorily-

guaranteed right to file one motion to reconsider and one motion to reopen. Quite to the contrary, inclusive terms "[t]he alien" and "[a]n alien" indicate a congressional intent that <u>all</u> aliens subject to a removal order are entitled to file such motions. Assuredly, the Attorney General cannot by regulation rewrite the Act to exempt an entire subclass of aliens when Congress itself chose not to authorize such an exemption. See <u>Suiter</u>, 151 F.3d at 1280-81; <u>Lee</u>, 135 F.3d at 1360-62.

**2**

Structurally, § 1229a reinforces my interpretation. Throughout § 1229a, Congress codified a number of limitations on an alien's right to file for reconsideration or reopening. Those limitations are express and clear. <u>See</u> § 1229a(c)(6)(B) (motions to reconsider must be filed within 30 days of final removal order); § 1229a(c)(6)(C) (motions to reconsider must challenge errors of law or fact, rather than the exercise of discretion, and must be supported by pertinent authority); § 1229a(c)(7)(B) (motions to reopen must state new facts and be supported by evidentiary material); § 1229a(c)(7)(C) (motions to reopen must generally be filed within 90 days of final removal order). In doing so, Congress clearly considered the need to limit the filing of such motions and selected a precise scheme of time, number, and content restrictions.

Sections 1229a(c)(6)(A) and (7)(A) also include an express limitation: aliens are limited to <u>one</u> motion to reconsider and <u>one</u> motion to reopen.[5]  In contrast, what § 1229a does not do is limit by geography the class of aliens eligible to file motions to reconsider and reopen.  That Congress expressly included multiple limitations, but chose not to include another—one based on geography—presents a paradigmatic example of the canon of statutory construction <u>expressio unius est exclusio alterius</u>.  <u>See</u> <u>United States v. Brown</u>, 529 F.3d 1260, 1265 (10th Cir. 2008); <u>see</u> <u>also</u> <u>United States v. Johnson</u>, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others.  The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."); <u>United States v. Goldbaum</u>, 879 F.2d 811, 813 (10th Cir. 1989) ("As a general principle of statutory interpretation, if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded.").

This point is supported by another provision in the same statute.  In § 1229a(c)(7)(C)(iv)(IV), Congress <u>did</u> include a geographic condition, exempting

---

[5] The House Report accompanying the passage of IIRIRA shows that Congress considered § 1229a(c)(6)(A) and (7)(A) to embody an important limit on an alien's right to file motions to reconsider and reopen:  "Aliens are limited to a single motion to reconsider and a single motion to reopen removal proceedings."  H.R. Rep. No. 104-469, pt. 1, at 159 (1996).

victims of domestic violence from the deadline for filing a motion to reopen "if the alien is physically present in the United States at the time of filing the motion." 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV) (emphasis added); see Sanchez v. Keisler, 505 F.3d 641, 642 (7th Cir. 2007).[6] Obviously aware of the potential for such a distinction, Congress chose not to include similar language in § 1229a(c)(6)(A) and (7)(A). This textual contrast serves as a buttress to the conclusion that Congress did not intend to limit by geography the availability of motions to reconsider or reopen. Indeed, by concluding as it does that an alien must be in the United States to file any motion to reconsider or reopen, the majority would "render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplusage." William, 499 F.3d at 333.

Relying on the dissent in William, the majority advances two reasons to disregard the inference I draw from the existence of the physical presence requirement in § 1229a(c)(7)(C)(iv)(IV) and its conspicuous absence in § 1229a(c)(6)(A) and (7)(A). Maj. Op. at 15-16; see William, 499 F.3d at 337-38 (Williams, J., dissenting). First, my colleagues note that the physical-presence requirement was added in 2006, see Violence Against Women and Department of

---

[6] Imposing a "physical presence" requirement on aliens who seek to invoke the § 1229a(c)(7)(C)(iv) "special rule for battered spouses, children, and parents," but not on other aliens, is only logical. This rule was enacted to protect aliens who have "been battered or subjected to extreme cruelty in the United States" in connection with their need for immigration benefits. 8 U.S.C. § 1641(c)(1)(A) (emphasis added).

Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 825, 119 Stat. 2960, 3063-64 (2006), and therefore infer that it sheds no light on what Congress intended when it enacted IIRIRA in 1996, see William, 499 F.3d at 337. Second, the majority agrees that "§ 1229a(c)(7)(C)(iv)(IV)'s physical-presence requirement is not coextensive with the regulatory departure bar." Id.

The majority's first argument is wrong on two counts. As an initial matter, whether particular language in the statute was added in 1996 or 2006, we must still read the statute as a whole. TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quotations omitted)); Bridger Coal Co./Pac. Minerals, Inc., v. Dir., Office of Workers' Comp. Programs, 927 F.2d 1150, 1153 (10th Cir. 1991) ("We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous."). If physical presence in the United States were already required of aliens before they filed a motion to reconsider or reopen under § 1229a(c)(6)(A) and (7)(A), the "physically present" language in § 1229a(c)(7)(C)(iv)(IV) would be entirely superfluous.

Second, it is equally probable that Congress included the "physically present" language in 2006 precisely because § 1229a(c)(6)(A) and (7)(A) contain no such requirement. In other words, Congress in 2006 understood perfectly well what it had done in 1996: all aliens, whether or not physically present in the

-10-

United States, were granted the right to file one motion to reconsider and one motion to reopen. Congress also imposed a strict time limit—a limit it then chose to lift in 2006 for qualifying victims of domestic violence filing a motion to reopen while <u>physically present</u> in the United States. § 1229a(c)(7)(C)(iv)(IV); <u>see</u> <u>William</u>, 499 F.3d at 333 (majority op.) ("Congress knew how to include a requirement of physical presence when it wished to do so, as it did in § 1229a(c)(7)(C)(iv)(IV).").

We are offered a second explanation for rejecting the logical inference which should be drawn from the "physically present" language: the 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV) requirement could be read as different in scope from the 8 C.F.R. § 1003.23(b)(1) post-departure bar. My majority colleagues embrace the thinking of the <u>William</u> dissent:

> [O]ne can reasonably understand § 1229a(c)(7)(C)(iv)(IV) to mean that as long as the qualifying alien files a motion to reopen before departing the country, the alien's subsequent departure from the United States has no effect on the BIA's ability to hear the motion, which is a decidedly different result than would obtain under the [post-]departure bar.

<u>William</u>, 499 F.3d at 337-38 (Williams, J., dissenting).

In choosing the position of the <u>William</u> dissent, the majority concludes that Congress intended to benefit qualifying aliens by allowing the BIA to consider a motion to reopen even after those aliens have departed from the United States, whereas all other aliens would forfeit such motions by departing under the terms

of the bar.  But this interpretation is incompatible with the next portion of the same statutory subsection.  In addition to excepting domestic violence victims from certain time limitations "if the alien is physically present in the United States at the time of filing the motion," § 1229a(c)(7)(C)(iv) continues:

> The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien . . . pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.

Thus, removal from the United States of a qualifying domestic violence victim is stayed pending the resolution of the victim's motion to reopen.  For a stay of removal to have teeth, the alien must be "physically present" in the United States.  Once removal of a qualifying alien is stayed, the alien will presumably remain in the United States.[7]  And if the alien remains in the United States, the post-departure bar will never be implicated.  Thus, it simply cannot be correct that the "physically present" language in § 1229a(c)(7)(C)(iv)(IV) "carv[es] out a limited exception to the general working of the [post-]departure bar."  William, 499 F.3d at 337.  The post-departure bar does not come into play when removal of a qualifying alien has been stayed.

---

[7] Even if an alien agreed to voluntary departure, Dada allows the alien to withdraw consent to voluntary departure and remain in the United States.  128 S. Ct. at 2319; see infra Part I.B.  The majority's interpretation would thus operate to protect the rare individual who, notwithstanding the stay of removal, chose to leave the country.  It hardly seems likely that this subgroup of aliens, should such a subgroup exist, was the object of Congress's concern and motivated the inclusion of § 1229a(c)(7)(C)(iv)(IV).

The history of IIRIRA further supports a plain text reading of § 1229a(c)(6)(A) and (7)(A).  Until 1996, there existed by statute a post-departure bar to judicial review of deportation orders.  8 U.S.C. § 1105a(c) (1995) ("An order of deportation or of exclusion shall not be reviewed by any court <u>if the alien . . . has departed from the United States after the issuance of the order</u>." (emphasis added) (repealed 1996)).  Moreover, motions to reconsider and reopen were entirely creatures of regulation until 1996.  <u>William</u>, 499 F.3d at 330 (majority op.); <u>Azarte</u>, 694 F.3d at 1283.  In line with the statutory post-departure bar to judicial review, the Code of Federal Regulations provided at the time that "[a] motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States."  8 C.F.R. § 3.2 (1995) (current versions at § 1003.2(d) (2008), governing motions before the BIA, and § 1003.23(b)(1) (2008), governing motions before an IJ).  When Congress enacted IIRIRA in 1996, the statutory scheme changed substantially.

On point, IIRIRA accomplished two significant goals.  First, the Act repealed § 1105a(c) and granted circuit courts jurisdiction to review orders of removal.  <u>William</u>, 499 F.3d at 330; <u>see</u> IIRIRA, Pub. L. No. 104-208, div. C, § 306, 110 Stat. 3009-546, 3009-607 to 612 (1996) (codified as amended at 8 U.S.C. § 1252); 8 U.S.C. § 1252(a)(5).  Second, the Act codified the statutory

right of all aliens to file one motion to reconsider and one motion to reopen. William, 499 F.3d at 330; see 8 U.S.C. § 1229a(c)(6)(A) & (7)(A).

Again we are driven to one conclusion: Congress knew how to codify a post-departure bar when it so elected. Such a bar prohibited all judicial review until 1996. That Congress chose not to include a post-departure bar to the filing of motions to reconsider and reopen when it enacted § 1229a(c)(6)(A) and (7)(A) demonstrates that Congress did not intend to authorize such a limitation.

**4**

At bottom, the government's argument in support of the validity of the post-departure bar amounts to this: prohibiting departed aliens from filing motions to reconsider or reopen is good policy. In its brief, the government fails to engage in a Chevron analysis and devotes itself almost entirely to defending the efficiency of the post-departure bar. According to the government, the regulatory bar is consistent with the Congress's purpose in passing IIRIRA— "to make it easier to deny admission to inadmissible aliens and easier to remove deportable aliens from the United States." H.R. Rep. No. 104-469, pt. 1, at 157 (1996). Invalidating the post-departure bar, the government tells us, would be inconsistent with this congressional purpose.

As an initial matter, the government's policy argument presents a non-sequitur. Merely because the post-departure bar may be consistent with the broad purpose of the IIRIRA, it does not follow that invalidating the regulation is

-14-

inconsistent with that purpose. Even were we to assume that the sole purpose of the IIRIRA is to facilitate removal of deportable aliens, the interpretation of § 1229a(c)(6)(A) and (7)(A) advanced by this dissent is fully consistent with that goal.[8] Facially, these sections "make it easier to remove deportable aliens" because aliens are limited to <u>one</u> motion to reconsider and <u>one</u> motion to reopen within an express time limitation. As discussed, Congress was attentive to the need to limit motions to reconsider and reopen, but chose an approach different from that promulgated by the Attorney General in § 1003.23(b)(1). Because a departed alien seeking to file a motion to reconsider or reopen has already left the United States, the alien cannot use these motions as a means of delaying removal.

As with an inconsistent regulation, when the meaning of a statute is plain and clear, there is no room left in the interpretive equation for policy arguments and they too must be left outside in the unsheltered cold. "When the words of a statute are unambiguous, . . . this first canon is also the last: judicial inquiry is complete." <u>Conn. Nat'l Bank. v. Germain</u>, 503 U.S. 249, 254 (1992) (quotation omitted). What we wrote in <u>Lee</u> is equally applicable here: "There may be good policy reasons for exempting" departed aliens from § 1229a(c)(6)(A) and (7)(A),

---

[8] Moreover, simply because a statute is generally intended to facilitate enforcement does not mean that every provision therein must be interpreted to maximally benefit the government and disadvantage the regulated individual. If that were Congress's intent, there would be little reason to allow motions to reconsider or reopen at all.

-15-

"but that determination is legislative in nature and is properly made by Congress, and not by regulatory fiat." See Lee, 135 F.3d at 1361 (quotation omitted).

**B**

The Supreme Court's recent decision in Dada v. Mukasey, 128 S. Ct. 2307 (2008), further supports the conclusion that the post-departure bar is inconsistent with § 1229a(c)(6)(A) and (7)(A).  In Dada, the Court held that all aliens have a "statutory right" to file one motion to reopen, writing "the statutory text [of § 1229a(c)(7)(A)] is plain insofar as it guarantees to each alien the right to file 'one motion to reopen proceedings.'" 128 S. Ct. at 2316, 2317.  The Court then relied upon this conclusion to interpret 8 C.F.R. § 1003.2(d), which is functionally identical to the relevant portion of § 1003.23(b)(1) and provides that an alien's departure from the United States effects a withdrawal of his motion to reopen.  Given the unambiguous congressional command of § 1229a(c)(7)(A) that each alien may file one motion to reopen, the Court reasoned that an alien must be permitted to withdraw consent to voluntary departure if necessary to "safeguard the right to pursue " the statutorily-guaranteed motion.[9] Id. at 2319.

---

[9] Voluntary departure is a statutory process by which certain aliens can leave the country willingly within a prescribed time frame.  Dada, 128 S. Ct. at 2312.  In exchange for saving the government the expense and burden of deportation, the alien avoids prolonged detention, chooses the country of destination, and facilitates the possibility of readmission.  Id. at 2314. "Voluntary departure serves the practical goals of reducing the costs associated with deporting individuals from the United States and providing a mechanism for

(continued...)

-16-

Otherwise, an alien agreeing to voluntarily depart would face a Catch-22 situation incompatible with the clear statutory text. Either the alien would have to depart the United States and his motion to reopen would be deemed withdrawn, or the alien could remain in the United States in order to obtain a ruling on the motion, thus staying beyond the voluntary departure period and risking the loss of eligibility for a potential adjustment of status. This, of course, is the very relief being sought through the motion to reopen. Id. at 2318. The Court pointedly noted that Dada had not challenged the validity of the underlying rule that deems a motion to reopen withdrawn if the alien leaves the United States. Id. at 2320. The validity of § 1003.2(d) was therefore not at issue in Dada, but the validity of closely analogous § 1003.23(b)(1) is squarely before us today.

Notably, the Dada Court held that withdrawal of consent to voluntary departure must be permitted precisely because § 1229a(c)(7)(A) is clear and unambiguous: an alien must be allowed to file one motion to reopen. 128 S. Ct. at 2316. In rejecting the government's contrary position—that an alien is not entitled to pursue a § 1229a(c)(7)(A) motion following a voluntary departure—the Court reasoned that "[i]t would render the statutory right to seek reopening a nullity in most cases of voluntary departure." Id. at 2317 (emphasis added). But

---

[9](...continued)
illegal aliens to leave the country without being subject to the stigma or bars to future relief that are part of the sanction of deportation." Azarte, 394 F.3d at 1284.

-17-

one inescapable conclusion can be drawn from that language:  an alien cannot be forced by regulation to forfeit a motion guaranteed by statute.

The logic of <u>Dada</u> applies with equal force to the case before us.  Just as the language of § 1229a(c)(7)(A) is plain, <u>see</u> <u>Dada</u>, 128 S. Ct. at 2316, the language of § 1229a(c)(6)(A) is equally plain:  all aliens have the right to file one motion to reconsider regardless of whether they have departed from the United States.  As in <u>Dada</u>, Rosillo-Puga cannot be forced by regulation to forfeit the right to file one motion to reconsider and one motion to reopen.  Because § 1003.23(b)(1) accomplishes exactly that forbidden result, that regulation cannot stand.  <u>See</u> <u>Costello v. INS</u>, 376 U.S. 120, 127-28 (1967) ("[Courts should] hesitate long before adopting a construction of [a statute] which would, with respect to an entire class of aliens, completely nullify a procedure so intrinsic a part of the legislative scheme.").[10]

---

[10] The majority's attempt is distinguish <u>Dada</u> is unpersuasive.  My colleagues read <u>Dada</u> as affirming the validity of § 1003.23(b)(1).  Maj. Op. at 11 n.3 ("The very problem identified by the Supreme Court in <u>Dada</u> would not exist but for the validity of the regulation challenged here.").  In fact, the Court necessarily <u>assumed</u> the validity of § 1003.23(b)(1), just as it assumed the validity of § 1003.2(d).  This is entirely unremarkable, as neither regulation was challenged before the Court.  <u>See</u> <u>Dada</u>, 128 S. Ct. at 2320 ("This regulation, however, has not been challenged in these proceedings, and we do not consider it here.").  Moreover, the majority places undue reliance on the BIA's decision in <u>Matter of Armendarez-Mendez</u>, 24 I & N Dec. 646, 655-56 & n.7 (2008).  This court owes no deference to an agency's interpretation of a Supreme Court decision.  Nor do we defer to an agency's interpretation of an unambiguous statute.  <u>Chevron</u>, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is

(continued...)

-18-

## C

My colleagues offer a final reason to deny Rosillo-Puga's appeal: His motion was untimely. It is well established, however, that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." SEC v. Chenery Corp., 318 U.S. 80, 87 (1943); see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983) ("[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself."); Cherokee Nation of Okla. v. Norton, 389 F.3d 1074, 1078 (10th Cir. 2004); Utahns for Better Transp. v. U.S. Dep't of Transp., 305 F.3d 1152, 1165 (10th Cir. 2002). Neither the IJ nor the BIA based its dismissal of Rosillo-Puga's motion on timeliness. My colleagues offer no reason to depart from the general rule of Chenery. We thus may not uphold the BIA's decision on the ground of untimeliness.[11]

---

[10](...continued)
the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

[11] This circuit has already determined that the ninety-day statutory deadline for filing a motion to reopen may be tolled. See Riley v. INS, 310 F.3d 1253, 1257-58 (10th Cir. 2002). Accordingly, it is not a jurisdictional limit and should not be raised sua sponte. Other circuits are in accord. See Socop-Gonzalez v. INS, 272 F.3d 1176, 1190-93 (9th Cir. 2001) (en banc); Iavorski v. INS, 232 F.3d 124, 130-34 (2d Cir. 2000). My colleagues apparently assume that the filing deadline contained in § 1229a(c)(6)(B) is similarly not a jurisdictional restriction. Cf. Pervaiz v. Gonzales, 405 F.3d 488, 490 (7th Cir. 2005) (holding that the 180-day filing deadline applicable to motions to reopen from removal orders filed in absentia is not jurisdictional); Borges v. Gonzales, 402 F.3d 398, 405-06 (3d Cir.
(continued...)

-19-

## II

Although I would invalidate the challenged portion of § 1003.23(b)(1), I note briefly my further disagreement with the majority's conclusion that an IJ lacks sua sponte authority to reconsider or reopen a removal proceeding after an alien has departed the United States. Maj. Op. at 25-26. My colleagues reach this conclusion by invoking the "canon of statutory construction that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs." Shawnee Tribe v. United States, 423 F.3d 1204, 1213 (10th Cir. 2005) (quotation omitted). In their view, the specific provision in § 1003.23(b)(1) that prohibits a departed alien from filing a motion to reconsider or reopen "subsequent to his or her departure from the United States" trumps the general provision authorizing an "Immigration Judge upon his or her own motion at any time, . . . [to] reopen or reconsider any case in which he or she has made a decision." 8 C.F.R. § 1003.23(b)(1).[12]

---

[11](...continued)
2005);(same); Lopez v. INS, 184 F.3d 1097, 1098 (9th Cir. 1999) (same). But see Anin v. Reno, 188 F.3d 1273, 1278 (11th Cir. 1999) (holding that the 180-day filing deadline is "jurisdictional and mandatory").

[12] The majority also notes in passing that "we do not have jurisdiction to consider petitioner's claim that the [IJ] should have sua sponte reopened the proceedings under [8 C.F.R. § 1003.23(b)(1)] because there are no standards by which to judge the agency's exercise of discretion." Maj. Op. at 25 (quotation omitted). Although that may be true, it has no relevance to this case. Here, the IJ did not exercise his discretion not to reconsider or reopen. Quite the contrary, the IJ concluded as a legal matter that he lacked discretion entirely, given the post-
(continued...)

Contrary to the majority's view, there is simply no conflict between these two provisions. One speaks to the authority of the IJ, the other to the rights of aliens. The general provision in the regulation allows an IJ "at any time" to reopen or reconsider a case. The post-departure bar, by contrast, says nothing about the power of an IJ. Rather, it provides that "A motion to reopen or to reconsider <u>shall not be made</u> by . . . a person . . . subsequent to his or her departure from the United States." Under a proper reading of § 1003.23(b)(1), although an alien may not move for reconsideration or reopening following departure, an IJ always retains the discretionary authority to sua sponte reopen or reconsider a case.[13]

### III

For the foregoing the reasons, I would strike down the challenged portion of 8 C.F.R. § 1003.23(b)(1) under the first step of <u>Chevron</u>.[14] I consider it

---

[12](...continued)
departure bar. That legal conclusion is reviewable by this court, <u>see</u> 8 U.S.C. § 1252(a)(2), and it is erroneous. <u>See</u> <u>infra</u>.

[13] On point, the BIA is of the view that it can reconsider or reopen a case sua sponte in "exceptional circumstances" pursuant to 8 C.F.R. § 1003.2 which, as noted, is functionally identical to the regulation at issue here, except that it applies to the BIA rather than to the IJ. <u>See, e.g.</u>, <u>In re J-J</u>, 21 I & N Dec. 976, 984 (1997) (citing 8 C.F.R.§ 3.2(a) (1997)) (current version at 8 C.F.R. § 1003.2(a) (1998)); <u>see also</u> Maj. Op. at 26 n.7.

[14] Assuming the challenged portion of § 1003.23(b)(1) is valid, I agree that the regulation applies to Rosillo-Puga, that it is not arbitrary or capricious as applied, and that it does not violate due process.

-21-

unnecessary for us to reach the sua sponte authority of an IJ to reconsider or reopen Rosillo-Puga's case, but were we to reach the issue, I would conclude that the IJ does possess such authority. The majority having concluded otherwise on both counts, I respectfully dissent.